**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steve Alan Boggs,<br><br>    Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>    Respondents. | No. CV-14-02165-PHX-GMS<br><br>DEATH-PENALTY CASE<br><br>**ORDER** |

  Before the Court is Petitioner Steve Alan Boggs's Motion for Temporary Stay and Abeyance and for Authorization to Appear in Ancillary State-Court Proceedings. (Doc. 41.) Boggs asks the Court to stay and hold his case in abeyance while he pursues state court relief. He also seeks permission for his federal habeas counsel to appear on his behalf in state court. Respondents filed a response opposing a stay and Boggs filed a reply. (Docs. 42, 43.) For the reasons set forth below, the motion is denied.

## I. BACKGROUND

  In 2002, Boggs and Christopher Hargrave, members of a white supremacist militia group, shot three fast-food workers to death. In 2005, a jury found Boggs guilty of three counts of first-degree murder and determined that he should be sentenced to death. The Arizona Supreme Court affirmed the convictions and sentences. *State v. Boggs*, 218 Ariz. 325, 185 P.3d 111 (2008). After unsuccessfully pursuing post-conviction relief, Boggs filed a petition for writ of habeas corpus in this Court. (Doc. 15.) Respondents filed an answer and Boggs filed a reply. (Docs. 21, 26.) Boggs's brief on evidentiary development

was due on November 14, 2016. (Doc. 40.) He filed the pending motion on October 31, 2016. (Doc. 41.)

Boggs now seeks a stay so that he can return to state court and present several claims. He argues that *Lynch v. Arizona*, 136 S. Ct. 1818 (2016) (per curiam), and *Hurst v. Florida*, 136 S. Ct. 616 (2016), are significant changes in the law under Arizona Rule of Criminal Procedure 32.1(g). He also contends that additional mitigation evidence constitutes newly discovered material facts that probably would have changed the verdict or sentence under Arizona Rule of Criminal Procedure 32.1(e). Finally, Boggs argues that the new mitigation evidence demonstrates by clear and convincing evidence that the court would not have imposed the death penalty under Arizona Rule of Criminal Procedure 32.1(h).

## II. ANALYSIS

Boggs's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(b)(1)(A). Although AEDPA does not deprive courts of the authority to stay habeas corpus petitions, it "does circumscribe their discretion." *Rhines v. Weber*, 544 U.S. 269, 276 (2005). The Supreme Court has emphasized that the stay and abeyance of federal habeas petitions is available only in limited circumstances. *Id.* at 277. "Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Id.*

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U .S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). In Arizona, there are two avenues for petitioners to exhaust federal constitutional claims: direct appeal and post-conviction relief proceedings ("PCR"). Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3). The preclusive

effect of Rule 32.2(a) may be avoided only if a claim falls within certain exceptions and the petitioner can justify why the claim was omitted from a prior petition or not presented in a timely manner. *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(b), 32.4(a).

When a petitioner has an available remedy in state court that he has not procedurally defaulted, it is appropriate for the federal court to stay the habeas proceedings if (1) there was good cause for the petitioner's failure to exhaust his claims first in state court, (2) his unexhausted claims are potentially meritorious, and (3) there is no indication that he engaged in intentionally dilatory litigation tactics. *See Rhines*, 544 U.S. at 277. As discussed below, courts also have the inherent power to stay cases as a means of controlling their dockets. *Landis v. North American. Co.*, 299 U.S. 248, 254 (1936)

Citing *Hurst*, Boggs seeks a stay under *Rhines* to exhaust his Claim 38 of his habeas petition.[1] (Doc. 43 at 7.) With respect to the other claims, he seeks a stay to "present in state court newly available claims without simultaneous and potentially unnecessary federal proceedings." (Doc. 43 at 3.)

**A.   Rule 32.1(g)**

Boggs contends that under Rule 32.1(g), the United States Supreme Court's recent decisions in *Lynch* and *Hurst* provide an available remedy in state court. Rule 32.1(g) provides that a defendant may file a petition for post-conviction relief on the ground that "[t]here has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence." Ariz. R. Crim. P. 32.1(g).

Arizona courts have characterized a significant change in the law as a "transformative event," *State v. Shrum*, 220 Ariz. 115, 118, 203 P.3d 1175, 1178 (2009), and a "clear break" or "sharp break" with the past. *State v. Slemmer,* 170 Ariz. 174, 182, 823 P.2d 41, 49 (1991). "The archetype of such a change occurs when an appellate court

---

[1] Boggs alleges that Arizona's death penalty statute violates the Sixth Amendment because it does not require the jury to find beyond a reasonable doubt that the aggravating factors outweigh the mitigating circumstances. (Doc. 15 at 420–21.)

overrules previously binding case law." *Shrum*, 220 Ariz. at 118, 203 P.3d at 1178. A statutory or constitutional amendment representing a definite break from prior law can also constitute a significant change in the law. *Id.* at 119, 203 P.3d at 1179; *see State v. Werderman*, 237 Ariz. 342, 343, 350 P.3d 846, 847 (App. 2015).

In *Lynch*, 136 S. Ct. 1818, the Supreme Court applied *Simmons v. South Carolina*, 512 U.S. 154 (1994), to a capital sentencing in Arizona. *Simmons* held that when future dangerousness is an issue in a capital sentencing determination, the defendant has a due process right to require that his sentencing jury be informed of his ineligibility for parole. 512 U.S. at 171.

In *Lynch*, the defendant was convicted of murder and other crimes. 136 S. Ct. at 1818. Before the penalty phase of his trial began, the state successfully moved to prevent his counsel from informing the jury that, if the defendant did not receive a death sentence, he would be sentenced to life in prison without possibility of parole. *Id.* at 1819. The jury sentenced him to death. *Id.* On appeal, Lynch argued that, because the state had made his future dangerousness an issue in arguing for the death penalty, the jury should have been given a *Simmons* instruction stating that the only non-capital sentence he could receive under Arizona law was life imprisonment without parole. *Id.* The Arizona Supreme Court affirmed, holding that the failure to give the *Simmons* instruction was not error because Lynch could have received a life sentence that would have made him eligible for release after 25 years—even though any such release would have required executive clemency. *Id.* at 1820.

The United States Supreme Court reversed. *Id.* The Court reiterated that under *Simmons* and its progeny, "where a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole," the Due Process Clause "entitles the defendant to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel." *Id.* at 1818 (internal quotations omitted). The Court explained that neither the possibility of executive clemency nor the possibility that state parole statutes will be amended can justify refusing a parole-ineligibility instruction. *Id.* at 1820.

*Lynch* does not represent a change in the law. It simply applies existing law to an Arizona case. It is not a transformative event of the kind described by Arizona courts in interpreting Rule 32.1(g). In *Shrum*, for example, the Arizona Supreme Court cited *Ring v. Arizona*, 536 U.S. 584 (2002), as a "significant change in the law." 220 Ariz. at 119, 203 P.3d at 1179. *Ring* "expressly overruled" *Walton v. Arizona*, 497 U.S. 639 (1990). As the Arizona Supreme Court explained, "before *Ring*, a criminal defendant was foreclosed by *Walton* from arguing that he had a right to trial by jury on capital aggravating factors; *Ring* transformed existing Sixth Amendment law to provide for just such a right." *Shrum*, 220 Ariz. at 119, 203 P.3d at 1179.

In contrast to the holding in *Ring*, which expressly overruled precedent and invalidated Arizona's capital sentencing scheme, *Lynch* did not transform Arizona law. The holding does not constitute a significant change in law for purposes of Rule 32.1(g).

Respondents also argue, correctly, that *Lynch* would not apply retroactively. *Lynch* applies *Simmons* to an Arizona capital sentencing. In *O'Dell v. Netherland*, 521 U.S. 151, 167 (1997), the Supreme Court rejected the argument that *Simmons* represented a "watershed" rule of criminal procedure that would apply retroactively. Like *Simmons*, *Lynch* is procedural and nonretroactive. Therefore, Boggs is not entitled to retroactive application of *Lynch*, and his claim fails to meet the exception to preclusion set out in Rule 32.1(g).

Like *Lynch*, *Hurst* did nothing to transform Arizona law. In *Hurst*, 136 S. Ct. 616, the Supreme Court held that Florida's capital sentencing scheme violated *Ring*. Under the Florida scheme, a jury makes an advisory verdict while the judge makes the ultimate factual determinations necessary to sentence a defendant to death. *Id.* at 621–22. The Court held that this procedure was invalid because it "does not require the jury to make the critical findings necessary to impose the death penalty." *Id.* at 622. The Supreme Court simply applied *Ring* to Florida's capital sentencing statutes.

*Hurst* does not hold, as Boggs suggests, that a jury is required to find beyond a reasonable doubt that the aggravating factors outweigh the mitigating circumstances. (Doc. 41 at 7; Doc. 45 at 4–5.) *Hurst* held only that Florida's scheme, in which the jury

rendered an advisory sentence but the judge made the findings regarding aggravating and mitigating factors, violated the Sixth Amendment. *Hurst*, 136 S. Ct. at 620. *Hurst* did not address the process of weighing the aggravating and mitigating circumstances. Indeed, the Supreme Court has held that the sentencer may be given "unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." *Zant v. Stephens*, 426 U.S. 862, 875 (1983); *see Tuilaepa v. California*, 512 U.S. 967, 979–80 (1994). In *Zant*, the Court explained that "specific standards for balancing aggravating against mitigating circumstances are not constitutionally required." *Id.* at 875 n.13; *see Franklin v. Lynaugh*, 487 U.S. 164, 179 (1988) ("[W]e have never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required.").

In Arizona, in accordance with *Ring* and *Hurst*, the jury makes factual findings regarding the aggravating and mitigating factors to determine the appropriate sentence. *Hurst* did not effect a change in Arizona law for purposes of Rule 32.1(g).

Moreover, even if *Hurst* were a significant change in the law, it does not apply retroactively. The Supreme Court has held that "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review." *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004). *Hurst*, which applies *Ring* in Florida, is also nonretroactive. This claim does meet the Rule 32.1(g) exception to preclusion.

**B.     Rule 32.1(e) and (h)**

Under Rule 32.1(e), a claim is not precluded where "[n]ewly discovered material facts probably exist and such facts probably would have changed the verdict or sentence." Ariz. R. Crim. P. 32.1(e). Rule 32.1(h) provides an exception to preclusion where "[t]he defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty." Ariz. R. Crim. P. 32.1(h).

Boggs asserts that in state court he would offer newly discovered mitigation information, including evidence of "the extensive abuse, neglect, isolation, and other causes of trauma endured by Mr. Boggs as a child and adolescent"; "evidence on the links between trauma and the subsequent adoption of extremist ideology," "the frequency with which individuals exaggerate their involvement in extremist militias," and "statements from lay witnesses regarding their knowledge of the 'militia groups' to which Mr. Boggs belonged"; and a diagnosis of a Fetal Alcohol Spectrum Disorder. (Doc. 41 at 10–11.)

Respondents contend that a stay is inappropriate because Boggs is asserting a freestanding claim of actual innocence which is not cognizable on federal habeas review. (Doc. 42 at 14–15.) Respondents are correct. The Supreme Court has not recognized actual innocence as a stand-alone habeas claim. *See Herrera v. Collins,* 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009) ("Whether such a federal right exists is an open question.") (citing *House v. Bell*, 547 U.S. 518, 554–555 (2006)).

Regardless of whether the claim is cognizable, however, this Court may stay the proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. To evaluate whether to stay an action, the court must the weigh competing interests that will be affected by the grant or denial of a stay, including the possible damage that may result from the granting of a stay; the hardship or inequity a party may suffer in being required to go forward; and whether a stay will simplify or complicate issues, proof, and questions of law. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55)). "The decision to grant a stay . . . is 'generally left to the sound discretion of district courts.'" *Ryan v. Gonzales*, 133 S. Ct. 696, 708 (2013) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

If the requested stay may cause "even a fair possibility" of harm, Boggs bears the

burden of establishing "a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. The Court finds that the relevant factors do not weigh in favor of granting Boggs's motion for a stay.

Boggs asserts that "[a] stay would thus promote judicial economy and efficiency, and it would avoid simultaneous litigation in multiple fora." (Doc. 43 at 11.) This does not constitute a "clear case of hardship or inequity" given the Supreme Court's admonition that staying a federal habeas petition frustrates AEDPA's objectives of encouraging finality and streamlining federal habeas proceedings. *Rhines*, 544 U.S. at 277. In addition, because actual-innocence is not a cognizable claim on federal habeas review, denying the stay would not result in simultaneous litigation in state and federal court. Boggs will suffer no prejudice from denial of the stay and judicial economy will be preserved because the claim will not be litigated twice.

### III.  APPOINTMENT OF COUNSEL

Boggs asks the Court to authorize the Federal Public Defender's ("FPD") office to represent him in state court. The Criminal Justice Act provides for appointed counsel to represent their client in "other appropriate motions and procedures." 18 U.S.C. § 3599(e).

The Supreme Court interpreted § 3599 in *Harbison v. Bell*, 556 U.S. 180 (2009), holding that the statute "authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation." *Id.* at 194. The Court explained that "subsection (a)(2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties." *Id.* at 185. The Court noted, however, that appointed counsel is not expected to provide each of the services enumerated in section (e) for every client. Rather, "counsel's representation includes only those judicial proceedings transpiring 'subsequent' to her appointment." *Id.* at 188.

*Harbison* addressed the concern that under the Court's interpretation of § 3599, federally appointed counsel would be required to represent their clients in state retrial or state habeas proceedings that occur after counsel's appointment because such proceedings are also "available post-conviction process." *Id.* The Court explained that §

3599(e) does not apply to those proceedings because they are not "properly understood as a 'subsequent stage' of judicial proceedings but rather as the commencement of new judicial proceedings." *Id.* at 189. As to state post-conviction proceedings, the Court noted, "State habeas is not a stage 'subsequent' to federal habeas. . . . That state postconviction litigation sometimes follows the initiation of federal habeas because a petitioner has failed to exhaust does not change the order of proceedings contemplated by the statute." *Id.* at 189–90; *see Irick v. Bell*, 636 F.3d 289, 292 (6th Cir. 2011); *Lugo v. Sec'y, Florida Dep't of Corr.*, 750 F.3d 1198, 1213 (11th Cir. 2014), *cert. denied sub nom. Lugo v. Jones*, 135 S. Ct. 1171 (2015) (explaining "a state prisoner is not entitled, as a matter of statutory right, to have federally paid counsel assist him in the pursuit and exhaustion of his state postconviction remedies, including the filings of motions for state collateral relief . . . "); *Gary v. Warden, Ga. Diagnostic Prison*, 686 F.3d 1261, 1274 (11th Cir. 2012) (explaining "§ 3599 does not provide for federally-funded counsel to assist someone standing in Gary's shoes in pursuing a DNA motion, the results of which might serve as the basis for an extraordinary motion for a new trial").

Nevertheless, this Court has the discretion to appoint federal counsel to represent Boggs in state court. In *Harbison* the Supreme Court noted that "a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation." 556 U.S. at 190 n.7.

The Court has determined that Boggs is not entitled to a stay, either to exhaust claims based on *Lynch* and *Hurst* or to raise a claim premised on new evidence. Based on that determination, together with the *Harbison* Court's discussion of the parameters of § 3599(e), the Court finds it is not appropriate to authorize the FPD to represent Boggs in state court in this instance.

### IV.  CONCLUSION

Boggs is not entitled to a stay. *Lynch* and *Hurst* are not significant changes in the law for purposes of Rule 32.1(g). The Court will exercise its discretion to deny a stay with respect to Boggs's new evidence allegations and to deny the appointment of the FPD.

Accordingly,

**IT IS ORDERED** denying Boggs's Motion for Temporary Stay and Abeyance and for Authorization to Appear in Ancillary State-Court Proceedings. (Doc. 41.)

**IT IS FURTHER ORDERED** amending the briefing schedule as follows: Boggs shall file his Motion for Evidentiary Development no later than **January 20, 2017**. Respondents shall file their response no later than **February 17, 2017**. Boggs may file a reply no later than **March 3, 2017**.[2]

Dated this 6th day of January, 2017.

*G. Murray Snow*
Honorable G. Murray Snow
United States District Judge

---

[2] As already noted, Boggs's brief on evidentiary development was due November 14, 2016. The fact that he did not comply with that deadline but chose instead to file the pending order did not stay the briefing on evidentiary development.