**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steve Alan Boggs, | No. CV-14-02165-PHX-GMS |
| Petitioner, | DEATH PENALTY CASE |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Respondents. | |

Before the Court is Petitioner Steve Alan Boggs's Motion for Evidentiary Development. (Doc. 48.) Respondents filed a response in opposition to the motion and Boggs filed a reply. (Docs. 58, 61.) The motion is denied in part and granted in part, as set forth herein.

## I.    BACKGROUND

In 2002, Boggs and Christopher Hargrave shot three fast-food workers to death. In 2005, Boggs was found guilty of three counts of first-degree murder, among other counts, and sentenced to death. The following facts are taken from the opinion of the Arizona Supreme Court upholding the convictions and sentences. *State v. Boggs*, 218 Ariz. 325, 185 P.3d 111 (2008).

On May 19, 2002, police officers responded to a 911 call from a fast-food restaurant in Mesa. The first officer to arrive found one of the restaurant's employees, Beatriz Alvarado, lying on the ground outside the back door; she repeatedly asked for help but died from two gunshot wounds to her back. Inside the restaurant, officers found

the body of another employee, Fausto Jimenez, next to a telephone; Jimenez had been shot three times in the back but managed to dial 911 shortly before dying from his wounds. In the freezer was the body of a third employee, Kenneth Brown, who had died from two gunshot wounds. Police found shell casings and bullets in the freezer. Two cash registers were opened and contained only coins; a third register appeared as if someone had tried to pry it open. Jimenez and Brown were missing their wallets.

The next night, Hargrave, a friend of Boggs's who had recently been fired from the restaurant, tried to use Jimenez's bank card at an ATM.

Two days after the murders, Boggs traded in a Taurus handgun at a pawnshop. Police recovered the weapon and determined that it fired all of the shell casings and bullet fragments found at the scene, including bullet fragments found in the victims' bodies.

During police interviews with Detective Donald Vogel, Boggs "confessed to playing an active role in the robbery and admitted shooting at the victims." *Boggs*, 218 Ariz. at 331, 185 P.3d at 117. He described the murders in detail, explaining that "the victims were forced at gunpoint to lie down in the work area of the restaurant, ordered to remove everything from their pockets, ordered to march through the cooler into the back freezer with their hands interlaced on top of their heads, forced to kneel down, and then shot in rapid succession." *Id.* at 341, 185 P.3d at 127. Boggs also told police that after leaving the victims shot in the freezer, he and Hargrave heard screaming, "at which point he returned to the freezer and shot some more." *Id.*

Boggs and Hargrave were involved in a white supremacist "militia" they called the Imperial Royal Guard. They and their girlfriends were the only members. In a letter to a Detective Vogel, written after his confession, Boggs explained that his motive for the murders was racial rather than pecuniary.

Prior to trial, Boggs waived his right to counsel and represented himself. He relinquished his right to self-representation after several days of jury selection, and his advisory counsel took over his defense. Boggs moved to resume self-representation

between the aggravation and penalty phases, but the court denied his request. The jury found Boggs guilty of all charged crimes.

At sentencing, the jury found three aggravating factors for each of the murders: expectation of pecuniary gain, under A.R.S. § 13–703(F)(5); murders committed in an especially heinous, cruel or depraved manner, under § 13–703(F)(6); and a conviction for one or more other homicides during the commission of the offense, under § 13–703(F)(8). The defense presented mitigation evidence concerning Boggs's troubled childhood and mental health issues. At the close of the trial, the jury found Boggs's mitigation not sufficiently substantial to call for leniency and concluded that death was the appropriate sentence for each murder.

The Arizona Supreme Court affirmed the convictions and sentences. *Boggs*, 218 Ariz. 325, 185 P.3d 111. After unsuccessfully pursuing post-conviction relief ("PCR"), Boggs filed a petition for writ of habeas corpus in this Court. (Doc. 15.) Respondents filed an answer and Boggs filed a reply. (Docs. 21, 26.) Boggs filed the pending motion for evidentiary development on February 3, 2017. (Doc. 48.)

## II.    APPLICABLE LAW

### A.    AEDPA

Federal habeas claims are analyzed under the framework of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Under the AEDPA, a petitioner is not entitled to habeas relief on any claim adjudicated on the merits in state court unless the state court's adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  28 U.S.C. § 2254(d).

The Supreme Court has emphasized that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams (Terry) v. Taylor*, 529 U.S. 362, 410 (2000). Under § 2254(d), "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

In *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), the Court reiterated that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *See Murray (Robert) v. Schriro*, 745 F.3d 984, 998 (9th Cir. 2014) ("Along with the significant deference AEDPA requires us to afford state courts' decisions, AEDPA also restricts the scope of the evidence that we can rely on in the normal course of discharging our responsibilities under § 2254(d)(1).").

However, *Pinholster* does not bar evidentiary development where the court has determined, based solely on the state court record, that the petitioner "has cleared the § 2254(d) hurdle." *Madison v. Commissioner, Alabama Dept. of Corrections*, 761 F.3d 1240, 1249–50 (11th Cir. 2014); *see Pinholster*, 563 U.S. at 185; *Henry v. Ryan*, 720 F.3d 1073, 1093 n.15 (9th Cir. 2013) (explaining that *Pinholster* bars evidentiary hearing unless petitioner satisfies § 2254(d)).

For claims not adjudicated on the merits in state court, federal review is generally not available when the claims have been denied pursuant to an independent and adequate state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In Arizona, there are two avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3).

For unexhausted and defaulted claims, "federal habeas review . . . is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. *Coleman* further held that ineffective assistance of counsel in PCR proceedings does not establish cause for the procedural default of a claim. *Id.*

///

In *Martinez v. Ryan*, 566 U.S. 1 (2012), however, the Court established a "narrow exception" to the rule announced in *Coleman*. Under *Martinez*, a petitioner may establish cause for the procedural default of an ineffective assistance claim "by demonstrating two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland* . . .' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 566 U.S. at 14); *see Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015). The Ninth Circuit has explained that "PCR counsel would not be ineffective for failure to raise an ineffective assistance of counsel claim with respect to trial counsel who was not constitutionally ineffective." *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).

*Martinez* applies only to claims of ineffective assistance of trial counsel; it has not been expanded to other types of claims. *Pizzuto v. Ramirez*, 783 F.3d 1171, 1177 (9th Cir. 2015) (explaining that the Ninth Circuit has "not allowed petitioners to substantially expand the scope of *Martinez* beyond the circumstances present in *Martinez*"); *Hunton v. Sinclair*, 732 F.3d 1124, 1126–27 (9th Cir. 2013) (denying petitioner's argument that *Martinez* permitted the resuscitation of a procedurally defaulted *Brady* claim, holding that only the Supreme Court could expand the application of *Martinez* to other areas); *see Davila v. Davis*, 137 S. Ct. 2058, 2062– 2063, 2065-66 (2017) (explaining that the *Martinez* exception does not apply to claims of ineffective assistance of appellate counsel).

### B.    Evidentiary Development

A habeas petitioner is not entitled to discovery "as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993). Rule 6 of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal

Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. Whether a petitioner has established "good cause" for discovery requires a habeas court to determine the essential elements of the petitioner's substantive claim and evaluate whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)) (internal quotation marks omitted).

An evidentiary hearing is authorized under Rule 8 of the Rules Governing § 2254 Cases. Pursuant to § 2254(e)(2), however, a federal court may not hold a hearing unless it first determines that the petitioner exercised diligence in trying to develop the factual basis of the claim in state court. *See Williams (Michael) v. Taylor*, 529 U.S. 420, 432 (2000). If the failure to develop a claim's factual basis is attributable to the petitioner, a federal court may hold an evidentiary hearing only if the claim relies on (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). In addition, "the facts underlying the claim [must] be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the [petitioner] guilty of the underlying offense." *Id.*

When the factual basis for a claim has not been fully developed in state court, a district court first determines whether the petitioner was diligent in attempting to develop the record. *See Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). The diligence assessment requires a determination of whether a petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams (Michael)*, 529 U.S. at 435. For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to investigate and present the evidence to the state court. *Id.* at 438–

39, 442. The Ninth Circuit has explained that "a petitioner who 'knew of the existence of [ ] information' at the time of his state court proceedings, but did not present it until federal habeas proceedings, 'failed to develop the factual basis for his claim diligently.'" *Rhoades v. Henry*, 598 F.3d 511, 517 (9th Cir. 2010) (quoting *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005)).

Significantly, an evidentiary hearing is not required if the issues can be resolved by reference to the state court record. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise."); *see Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Likewise, "an evidentiary hearing is not required if the claim presents a purely legal question and there are no disputed facts." *Beardslee v. Woodford*, 358 F.3d 560, 585 (9th Cir. 2004); *see Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992).

Finally, under Rule 7 of the Rules Governing Section 2254 Cases, a federal habeas court is authorized to expand the record to include additional material relevant to the petition. The purpose of expansion of the record under Rule 7 "is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing." Advisory Committee Notes, Rule 7, 28 U.S.C. foll. § 2254; *see also Blackledge v. Allison*, 431 U.S. 63, 81–82 (1977); *Downs v. Hoyt*, 232 F.3d 1031, 1041 (9th Cir. 2000) (explaining that the need for an evidentiary hearing may be obviated by expansion of record); *Griffey v. Lindsey,* 345 F.3d 1058, 1067 (9th Cir. 2003) (stating that a hearing is not warranted if claims can "be resolved by reference to the state court record and the documentary evidence"), *vacated on other grounds as moot*, 349 F.3d 1157 (9th Cir. 2003).

Section 2254(e)(2) limits a petitioner's ability to present new evidence through a Rule 7 motion to the same extent that it limits the availability of an evidentiary hearing.

*See Cooper–Smith*, 397 F.3d at 1241 (applying § 2254(e)(2) to expansion of the record when intent is to bolster the merits of a claim with new evidence) (citing *Holland v. Jackson*, 542 U.S. 649, 652–53 (2004) (per curiam)). Accordingly, when a petitioner seeks to introduce new affidavits and other documents never presented in state court, he must either demonstrate diligence in developing the factual basis in state court or satisfy the requirements of § 2254(e)(2).

## III.   ANALYSIS

Boggs seeks evidentiary development on 19 of the 43 claims in his 450-page habeas petition. These include both exhausted and unexhausted claims.

### A.   Unexhausted Claims

The parties agree that the following claims for which Boggs seeks evidentiary development are procedurally defaulted: 1, 4 (in part), 7, 8, 15 (in part), 17, 18, 22, 40, and 43. Boggs contends their default is excused under *Martinez* by the ineffective assistance of appellate or PCR counsel. The Court disagrees.

In Claim 1, Boggs alleges that he was tried and sentenced while legally incompetent and that his due process rights were violated when he was found competent to waive representation. (Doc. 15 at 42.) Claim 4 alleges in part that Boggs's statements to Detective Vogel were inadmissible because Boggs was not competent to waive his right to counsel or his privilege against self-incrimination. (*Id.* at 80.) In Claim 7, Boggs alleges that the trial court violated his rights by failing to maintain a complete record of the trial. (*Id.* at 138.) In Claim 8, Boggs alleges that his constitutional rights were violated when he was ordered to wear a stun belt and leg restraint during his trial. (*Id.* at 149.) In Claim 15, Boggs alleges in part that his confrontation clause rights were violated by the introduction of rebuttal evidence during the penalty phase of his trial. (*Id.* at 224.) In Claim 17, Boggs alleges that the prosecutor committed misconduct when he argued that mitigation must have a causal nexus to the crime and presented evidence of Boggs's militia involvement. (*Id.* at 294.) In Claim 22, Boggs alleges that his execution would be unconstitutional because he is mentally impaired. (*Id.* at 339.) In Claim 40, Boggs alleges

that his constitutional rights were violated by the death-qualification of his jury. (*Id.* at 422.) Finally, in Claim 43, Boggs alleges cumulative prejudicial errors at his trial. (*Id.* at 437.)

Boggs did not present these claims on direct appeal. (*See* Doc. 21-1, Ex. A.) Therefore, as Boggs concedes, the claims are procedurally defaulted. Boggs argues, however, that the ineffective assistance of appellate and PCR counsel provide cause for the default and establish prejudice. These arguments fail.

First, before ineffective assistance of appellate counsel may be utilized as cause to excuse a procedural default, the particular ineffective assistance allegation must first be exhausted before the state courts as an independent claim. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) ("an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"); *Murray v. Carrier*, 477 U.S. 478, 489–90 (1986); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988). During the PCR proceedings, Boggs did not allege ineffective assistance of appellate counsel based on counsel's failure to raise these claims on appeal. (*See* ROA-PCR 54.)[1] Therefore, ineffective assistance of appellate counsel cannot constitute cause for their default. Boggs does not attempt to demonstrate that a fundamental miscarriage of justice will occur if the claims are not resolved on the merits.

Next, the alleged ineffectiveness of PCR counsel does not excuse the default under *Martinez*, which, as described above, applies only to defaulted claims of ineffective assistance of trial counsel. Unlike allegations of ineffective assistance of trial counsel, these claims could have been raised on direct appeal; therefore, they are not subject to the "limited qualification to *Coleman*" established in *Martinez*, 566 U.S. at 15. Boggs asserts that the equitable principles of *Martinez* should apply to other types of claims, but cites no authority for that argument, and the case law holds the opposite. *See Pizzuto*, 783 F.3d

---

[1] "ROA-PCR" refers to the record on appeal from post-conviction proceedings prepared for Boggs's petition for review to the Arizona Supreme Court (Case No. CR-14-0074-PC).

at 1177; *Hunton*, 732 F.3d at 1126–27. Therefore, these claims remain procedurally barred.

In addition, Claims 22 and 40 are clearly without merit. In Claim 22, Boggs alleges that he suffers from "serious mental illness" and his execution would violate the Eighth and Fourteenth Amendments. (Doc. 15 at 339.) In *Ford v. Wainwright*, 477 U.S. 399, 409–10 (1986), the Supreme Court held that it is a violation of the Eighth Amendment to execute someone who cannot comprehend that his execution is based on a conviction for murder. Boggs, however, does not contend that he is incompetent to be executed under *Ford*, only that he has "serious mental illness." In any event, a determination of incompetence cannot be made until an execution warrant is issued making the petitioner's execution imminent. *See Martinez-Villareal v. Stewart*, 118 F.3d 628, 630 (9th Cir. 1997) (citing *Herrera v. Collins*, 506 U.S. 390, 406 (1993)).

In Claim 40, Boggs alleges that his constitutional rights were violated by the death-qualification of his jury. (Doc. 15 at 422.) Clearly established federal law holds that the death-qualification process in a capital case does not violate a defendant's right to a fair and impartial jury. *See Lockhart v. McCree*, 476 U.S. 162, 178 (1986); *Wainwright v. Witt*, 469 U.S. 412, 424 (1985); *see also Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996) (finding death qualification of Arizona jurors not inappropriate).

Evidentiary development is denied on these unexhausted claims.

**B.    Exhausted Claims**

Boggs seeks discovery and expansion of the record in support of Claim 6, alleging that the pretrial seizure of materials from his jail cell impeded his ability to prepare for trial and consult with advisory counsel. (Doc. 48 at 32–34; *see* Doc. 15 at 117.) The Arizona Supreme Court denied this claim on direct appeal. *Boggs*, 218 Ariz. at 336–37, 185 P.3d at 122–23. Under *Pinholster*, 563 U.S. at 161, Boggs is not entitled to evidentiary development.

Boggs also seeks discovery and expansion of the record for a series of claims challenging the death penalty in general and elements of Arizona's death penalty scheme

in particular. The Arizona Supreme Court denied these claims on direct appeal. *Boggs*, 218 Ariz. at 344–45, 325, 185 P.3d at 130–31.

Boggs alleges that the death penalty constitutes cruel and unusual punishment, Claim 24, and serves no purpose beyond that served by a life sentence, Claim 30. (Doc. 15 at 389, 404.) In Claim 26, Boggs alleges that the "especially heinous, cruel or depraved" aggravating circumstance, A.R.S. § 13-703(F)(6), is unconstitutionally vague and overbroad. (*Id.* at 394.) In Claim 28, Boggs alleges that Arizona's death-penalty statute insufficiently channels the discretion of the sentencing authority. (*Id.* at 400.) The Arizona Supreme Court's rejection of these claims was neither contrary to nor an unreasonable application of clearly established federal law.

First, there is no clearly established federal law supporting the claim that the death penalty is categorically cruel and unusual punishment or that it serves no purpose. *See Gregg v. Georgia*, 428 U.S. 153, 187 (1976); *Hall v. Florida*, 134 S. Ct. 1986, 1992–93 (2014).

Next, the United States Supreme Court has upheld the (F)(6) aggravating factor against allegations that it is vague and overbroad, rejecting a claim that Arizona has not construed it in a "constitutionally narrow manner." *See Lewis v. Jeffers*, 497 U.S. 764, 774–77(1990); *Walton v. Arizona*, 497 U.S. 639, 649–56 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 556 (2002). Boggs's challenge to the factor is without merit.

Finally, rulings of both the Ninth Circuit and the United States Supreme Court have upheld Arizona's death-penalty statute against allegations that particular aggravating factors do not adequately narrow the sentencer's discretion. *See Jeffers*, 497 U.S. at 774–77 (1990); *Walton*, 497 U.S. at 649–56; *Woratzeck v. Stewart*, 97 F.3d 329, 335 (9th Cir. 1996). The Ninth Circuit has also explicitly rejected the argument that Arizona's death penalty statute is unconstitutional because it "does not properly narrow the class of death penalty recipients." *Smith v. Stewart*, 140 F.3d 1263, 1272 (9th Cir. 1998).

Evidentiary development is denied as to these exhausted claims. Claims 24, 26, 28, and 30 are denied as meritless.

## C. Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel are governed by the principles set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687–88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689; *see Wong v. Belmontes*, 558 U.S. 15 (2009) (per curiam); *Bobby v. Van Hook*, 558 U.S. 4 (2009) (per curiam); *Cox v. Ayers*, 613 F.3d 883, 893 (9th Cir. 2010). To satisfy *Strickland*'s first prong, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

With respect to *Strickland*'s second prong, a defendant must affirmatively prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**Claim 2:**

Boggs alleges that trial counsel were ineffective for failing to challenge his competence to stand trial and waive counsel. (Doc. 15 at 60.) Boggs did not present the claim in state court. (*See* ROA-PCR 54.) He argues that its default is excused under *Martinez.* He seeks discovery, expansion of the record, and an evidentiary hearing. (Doc. 22 at 48.)

Boggs seeks to depose Dr. P.K. Drapeu, who provided psychiatric treatment to Boggs through Maricopa County Correctional Health Services (CHS) in 2002. (Doc. 48

at 23.) He seeks to expand the record to include, among other materials, documents from PCR counsel, notes from trial counsel Herman Alcantar, and the disciplinary records of co-counsel Nathaniel Carr; a report by Cynthia Boyd, an expert retained by PCR counsel; billing records of Randy Walker, Boggs's trial mitigation specialist, and Jeff Bachtle, Boggs's trial investigator; declarations from appellate counsel, from Drs. George DeLong and Richard Lanyon, and from Peter Simi, a sociologist and expert on right-wing militias; declarations from family members and school employees; Boggs's medical records, school records, and juvenile records; police reports; jail records; and reports by Drs. Ken Benedict and Julian Davies, experts retained during these habeas proceedings. (*Id.* at 23–30.) Finally, Boggs requests an evidentiary hearing to present testimony from Alcantar, Carr, Walker, Drs. Benedict, Davies, and Simi, Boggs's father and other family members, and a number of school employees. (*Id.* at 30.)

The Court denies these requests.

## 1. Additional facts

Boggs was initially represented by Maria Schaffer and James Logan with the Office of the Legal Advocate. On August 20, 2002, Schaffer moved for a competency evaluation under Rule 11 of the Arizona Rules of Criminal Procedure. (ROA 78.)[2] The motion was supported by the report of Dr. Lanyon, a forensic psychologist, who conducted an evaluation of Boggs on August 22, 2002. (ROA 78, Lanyon Report at 1.) Dr. Lanyon concluded that:

> due to Mr. Boggs'[s] chronic mental disorder, although he has a general understanding of courtroom procedure, he currently lacks the capacity to assist his lawyer in preparing a defense[] because he is simply too depressed to do so, and his auditory hallucinations keep interfering. He also appears not to care about the outcome one way or the other.

(*Id.*) Dr. Lanyon recommended a full evaluation for competency to stand trial. (*Id.*)

The court granted the motion and appointed another psychologist, Dr. DeLong, to conduct the evaluation. (ROA 80.) Dr. DeLong concluded that Boggs was competent to

---

[2] "ROA" refers to the record on appeal from trial and sentencing prepared for Boggs's direct appeal to the Arizona Supreme Court (Case No. CR–05–0174–AP).

stand trial. (Doc. 21-10, Ex. L.) He noted that Boggs had been diagnosed with Adjustment Disorder and Antisocial Personality Disorder but that neither diagnosis presented "any impediment to his participation in his defense or cooperating with counsel." (*Id.* at 8.) Dr. DeLong explained that the depression noted by Dr. Lanyon was a normal reaction to incarceration and that "[i]t is a time-limiting disorder that Mr. Boggs appears to have resolved in the time interval since he met with Dr. Lanyon." (*Id.*)

Schaffer requested that the court appoint a third doctor to evaluate Boggs. (RT 11/18/05 at 4.)[3] The court declined, finding "no need for a further evaluation of the defendant." (*Id.*) Citing Dr. DeLong's report, the court explained that "the problems that Dr. Lanyan [sic] alluded to that would inhibit the defendant's ability to assist counsel [—] which is the basis for his opinion—have gotten better over time. . . . [I]t doesn't appear that there will be a significant problem or significant enough to find the defendant incompetent." (*Id.* at 5.)

In April 2003, Schaffer and Logan withdrew as Boggs's counsel and were replaced by Alcantar as lead counsel and Carr as co-counsel. (ROA 109, 115.) On April 2, 2004, Boggs moved to waive counsel and represent himself on the kidnaping charges. (ROA 144.) The court denied the motion. (RT 4/2/04 at 3.) Boggs subsequently moved to represent himself on all charges.[4] (RT 6/18/04 at 6–7.)

The court deferred ruling on the motion until it was provided with additional mental health evaluations. (RT 7/16/04 at 9–12.) On August 13, 2004, Boggs's counsel submitted reports from Dr. Lanyon, Dr. Ester Ruiz, and Dr. Mark Walter. (RT 8/13/04 at 4.) Counsel also provided the court with a report by neurologist Dr. Gregory Hunter, but stated he did not intend to use it because it did not "show any type of neurological defect, or something I could use on either the use of competency or any defenses." (*Id.* at 3–4.)

Dr. Lanyon reviewed Boggs's voluminous medical and juvenile records, including several mental health evaluations, dating back to age 10. (ROA 327, Lanyon Report at 1–

---

[3] RT refers to the court reporter's transcript from Boggs's state court proceedings.

[4] This motion is absent from the state court record.

13.) He performed several psychological tests and interviewed Boggs's father, grandfather, and aunt. (*Id.* at 2.) Dr. Lanyon opined that Boggs suffered from mild diffuse brain damage, somatization disorder, and bipolar disorder with the possibility of delusional disorder. He noted "strong delusional themes running through [Boggs's] activities in high school, his thought processes surrounding the events of June 2002, and his current thought processes." (*Id.* at 22.)

Dr. Ruiz prepared a "trauma assessment report." She recounted the various traumas Boggs reportedly experienced while growing up, including physical and emotional abuse by his mother, the deaths of his siblings, and several instances of sexual assault. (ROA 327, Ruiz Report at 1–2.) Dr. Ruiz's diagnoses included post-traumatic stress disorder (PTSD) with dissociative features, bipolar mood disorder, ADHD, cognitive disorder not otherwise specified (NOS), oppositional defiant disorder, major depression, borderline personality disorder, and abandonment issues. (*Id.* at 6.)

Dr. Walter performed a neuropsychological examination. (Doc. 25-4, Ex. EE.) He found Boggs to be of average intelligence, low average achievement ability, average psychometric attention, and average memory functioning. (*Id.* at 4.) He noted that the impairment in Boggs's adaptive executive functioning was "consistent with his history of attention deficit and indicates the presence of brain damage, specifically in frontal lobe functioning." (*Id.* at 9.) He opined that these symptoms could be caused by uncontrolled seizures; they "could also stem from an FAE (Fetal Alcohol Effect) rather than full FAS [Fetal Alcohol Syndrome]." (*Id.*) Dr. Walter's diagnoses included Cognitive Disorder NOS and Attention Deficit/Hyperactivity Disorder. (*Id.*) He also concluded that Boggs has a seizure disorder and "reports psychotic symptoms." (*Id.*)

On September 3, 2004, after reviewing these reports, the court granted Boggs's request to waive counsel and represent himself. (RT 9/3/04 at 5.) The court found that it did "not appear that the limitations that the defendant has either neurologically or

psychologically are sufficient to indicate that he's not competent to proceed to trial . . . and not competent to waive his right to counsel." (*Id.*)

Boggs's trial began on April 5, 2005. After four days of voir dire, he relinquished his pro se status and Alcantar and Carr resumed their representation. (RT 4/11/05 at 5–6.)

Boggs argues that counsel's performance was ineffective because the Lanyon, Ruiz, and Walter reports do not directly address Boggs's competence to waive counsel. However, in addition to these examinations and the original Rule 11 exams performed by Drs. Lanyon and DeLong, Boggs's competence was evaluated twice during trial at counsel's request. Near the close of the State's case, when confronting the issue of whether Boggs would testify, counsel Alcantar asked for "at least, a Rule 11 prescreening." (RT 4/25/05 at 168.) The court granted the request. (*Id.*) Dr. John Toma performed the evaluation and found Boggs "competent to proceed":

> I found his thinking rational. I didn't see any evidence of a mental illness or defect that would prevent him from making rational decisions. He has an adequate legal foundation or understanding of the proceedings that are against him.

(RT 4/26/05 at 4.)

Dr. Toma concluded that there were "no active mental health issues" and that Boggs was "competent to assist counsel and waive any constitutional rights." (*Id.*) Dr. Toma also found that Boggs was capable of "weighing the consequences" and making a "rational decision" about whether to testify. (*Id.*)

A week later, prior to the mitigation phase of sentencing, Alcantar again requested an evaluation, stating there was a "reasonable basis" to question Boggs's competence. (RT 5/4/05 at 55.) Alcantar objected to the evaluation being performed by the State's expert, agreeing with the court that Dr. Toma would be the appropriate expert. (*Id.* at 54– 55.) Dr. Toma performed the evaluation, and several days later the court and the parties discussed his report. (RT 5/9/05 at 4.) Neither the State nor the defense had any questions about Boggs's competence, and the court agreed he was competent:

/ / /

It seems to me, based on Dr. Tomas' [sic] report, based on the other reports that I have reviewed in this case, based on my own observations of Mr. Boggs, he appears to be competent, able to assist counsel proceeding in the Court.

(*Id.*)

Drs. Lanyon and Ruiz testified on Boggs's behalf at sentencing. (RT 5/10/05.) Dr. Eugene Almer, a psychiatrist, evaluated Boggs and testified for the State in rebuttal. (RT 5/11/05.) Dr. Almer diagnosed Boggs with depressive disorder NOS, currently in remission, and borderline, narcissistic, and antisocial personality types. (ROA 327, Almer Report at 12.) He did not find evidence of fetal alcohol syndrome, brain damage, schizophrenia, thinking disorder, or bipolar disorder. (*Id.* at 14.)

2.    Analysis

Boggs is not entitled to evidentiary development on this claim. First, the state court record contains sufficient evidence to evaluate trial counsel's performance, and there are no disputed factual questions about counsel's handling of this issue. *See Landrigan*, 550 U.S. at 474; *Totten*, 137 F.3d at 1176; *Beardslee*, 358 F.3d at 585. Second, PCR counsel did not perform ineffectively by failing to raise the claim in state court because the underlying ineffective assistance of counsel claim is without merit. *See Sexton*, 679 F.3d at 1157.

A criminal defendant has a Sixth Amendment right to waive counsel and conduct his own defense. *Faretta v. California*, 422 U.S. 806, 819 (1975). However, he may not waive his right to counsel unless he does so "competently and intelligently." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)). The standard for determining competency to waive counsel is the same as the standard for competency to be tried. *Id.* at 399. It requires that a defendant have (1) "'a rational as well as factual understanding of the proceedings against him,' and (2) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). Whether a defendant is capable of understanding the

proceedings and assisting counsel is dependent upon evidence of the defendant's irrational behavior, his demeanor in court, and any prior medical opinions on his competence. *Drope v. Missouri*, 420 U.S. 162, 180 (1975).

"A claim that counsel was deficient for failing to move for a competency hearing will succeed only when there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." *Hibbler v. Benedetti*, 693 F.3d 1140, 1149–50 (9th Cir. 2012) (quotations omitted). Boggs can make neither showing.

As detailed above, trial counsel did not fail to raise the issue of Boggs's competence to stand trial and waive counsel, and on four occasions, including twice before Boggs was allowed to waive his right to counsel, the trial court found Boggs competent. Under these circumstances it cannot be said that there was any probability Boggs would have been found incompetent if the issue had been raised and fully considered. *See id.*

Boggs argues that there were many "red flags" calling his competence into question, including his "delusional" focus on the militia issue. Counsel did not ignore these concerns, however (*see* RT 6/18/04 at 7–10); nor did the experts who evaluated Boggs's competence and whose reports were provided to the trial court (*see* ROA 327, Lanyon report at 22).

Moreover, Boggs's reported mental health problems were not in themselves sufficient to show that he was incompetent to waive counsel. *See United States v. Garza*, 751 F.3d 1130, 1135–37 (9th Cir. 2014) (finding no need for competency hearing where defendant was diagnosed with anxiety and dementia but his behavior was not erratic and there was no indication that his conditions resulted in a failure to understand the proceedings or assist in his own defense); *Hoffman v. Arave*, 455 F.3d 926, 938 (9th Cir. 2006) ("[W]e have held that those with mental deficiencies are not necessarily incompetent to stand trial."), *vacated on other grounds by Arave v. Hoffman*, 552 U.S.

117, 117–19 (2008) (per curiam); *Boyde v. Brown*, 404 F.3d 1159, 1166–67 (9th Cir. 2005) (finding inmate's "major depression" and "paranoid delusions" did not raise a doubt regarding his competence to stand trial). Boggs did not behave erratically in court (*see* RT 5/9/05 at 4) and there was no expert consensus that any condition he may have suffered from impaired his ability to understand the proceedings or assist in his defense. *See Garza*, 751 F.3d at 1135–36.

PCR counsel, faced with this record, did not perform ineffectively by failing to challenge trial counsel's performance with respect to Boggs's competence to stand trial and waive counsel. The evidence of Boggs's incompetence was, at best, inconclusive; trial counsel did seek and obtain evaluations of Boggs's competency; and Boggs relinquished his pro se status and was represented by counsel throughout his trial and sentencing. In addition, at the request of PCR counsel, Dr. Cynthia Boyd, a forensic neuropsychologist, evaluated Boggs in August of 2011 and determined that "his cognitive abilities appeared grossly intact and without evidence of brain dysfunction"; "he is not suffering from a major mental disorder" such as schizophrenia or bipolar disorder; and there was "no neurological impairment." (Doc. 52-1, Ex. 59 at 11–13.) Again, this information offers no support for the proposition that Boggs was incompetent to be tried or to waive counsel.

The two most recent evaluations shed no light on Boggs's competence to stand trial and waive counsel in 2005. In his 2017 report, Dr. Benedict notes the "staggering array of diagnostic impressions rendered by evaluators over the years." (Doc. 51-9, Ex. 53 at 23.) He opines that Boggs suffers from "complex traumatic stress syndrome" and had Depressive Disorder, Not Otherwise Specified in 2005, shortly before his trial. (*Id.* at 28–29.) Dr. Davies, in her 2017 report, concluded that Boggs has Neurobehavioral Disorder/Alcohol Exposed, a Fetal Alcohol Spectrum Disorder (FASD)." (Doc. 51-9, Ex. 54 at 31.)

Boggs has also submitted a declaration from Dr. DeLong, dated December 2016. (Doc. 52, Ex. 55.) Dr. DeLong now states that if he had been presented with Boggs's

"previous psychiatric treatment records, psychoeducational records, and juvenile court records," he would have provided additional comments to his report finding Boggs competent. (*Id.* at 3.) Specifically, he would have "discussed the possibility that Mr. Boggs had a severe mental illness that could compromise his continuing ability to assist counsel productively and to act in his own best interest at trial." (*Id.*) Dr. DeLong's statements, while they may qualify his earlier findings, do not demonstrate a reasonable probability that Boggs would have been found incompetent to be tried or waive counsel. *Hibbler*, 693 F.3d at 1149–50.

Because PCR counsel's performance was not ineffective, Claim 2 remains procedurally defaulted and barred from federal review. *Sexton*, 679 F.3d at 1157.

**Claim 12:**

Claim 12 consists of nine allegations of ineffective assistance of counsel at the guilt phase of trial. (Doc. 15 at 175–211.) Boggs seeks expansion of the record and an evidentiary hearing in support of subparts (A) and (B). (Doc. 48 at 38–40; *see* Doc. 61 at 34.) In Claim 12(A), Boggs alleges that trial counsel failed to file numerous motions and make accompanying objections. (Doc. 15 at 176.) In Claim 12(B), he alleges that counsel failed to adequately object to or rebut the State's Rule 404(b) evidence concerning Boggs's militia involvement and white supremacist views. (*Id.* at 183.)

Boggs seeks to expand the record to include the documents described in Claim 2 concerning trial and PCR counsel; declarations from William Tobin, an expert in firearms/toolmarks examination, Dr. Simi, and Boggs' stepbrother Nickolas Tampone; and Imperial Royal Guard documents. Boggs further seeks an evidentiary hearing at which Tobin, Simi, Tampone, trial counsel, and others would testify.

Respondents contend that because Claims 12(A) and 12(B) were rejected on the merits by the PCR court, *Pinholster* limits this Court's review to the record that was before the state court. (Doc. 58 at 30.) Boggs, citing *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014), asserts that the "additional evidence [he] now seeks to present places the claims in a 'substantially improved evidentiary posture.'" (Doc. 61 at 34.) Therefore, he

argues, the claims are procedurally defaulted and subject to analysis under *Martinez*, which allows the consideration of new evidence. (*Id.* at 35.)

Claim 12(A)

Boggs contends that Tobin's report, dated January 15, 2017, supports a claim that trial counsel were ineffective for failing to challenge the State's ballistics evidence. (Doc. 48 at 38–39; *see* Doc. 61 at 34.) This is not an allegation Boggs raised in state court. It is not, in fact, a claim Boggs raised in his habeas petition, which cites only counsel's failure "to mount any challenge to the aggravating factors, the death penalty, the State's attempt to get a confidential expert report, and other ripe legal issues." (Doc. 15 at 181.)

*Martinez* does not excuse the default of this unexhausted claim. PCR counsel did not perform ineffectively by failing to allege that trial counsel performed ineffectively with respect to the ballistics evidence.

At trial, criminalist Patrick Chavez testified that he test-fired Boggs's Taurus and compared the cartridges with the casings found in the restaurant and the damaged projectiles taken from the victims' bodies. (*See* RT 4/13/05 at 110–59.) Chavez "positively identified" the test-fired cartridges as having been fired from the Taurus, stating he was "absolutely certain" and had "no doubt." (*Id.* at 133, 136–37, 139, 144–45, 148–49, 158–59.)

In his report, Tobin asserts that "[t]he forensic practice of firearms/toolmarks identification lacks the rigor of science and should not be represented to a finder of fact as a science" and therefore "forensic examiners should not be permitted to render opinions of individualization, unfounded expressions of certainty of any kind . . . or other conclusions implying an aura of precision generally associated with scientific endeavor." (Doc. 52-1, Ex. 58.) According to Tobin, "The strongest opinion that is scientifically and forensically defensible is that, *in the examiner's opinion*, a specific firearm could not be eliminated as the firing platform for the bullet(s) or cartridge case(s) examined." (*Id.*)

In his motion for evidentiary development, Boggs alleges that if trial counsel had "developed and presented this evidence, which was available at the time of trial . . . , it is

probable that Chavez's testimony would have been excluded or that his credibility before the jury would have been undermined, thereby weakening the link between Boggs and the crime." (Doc. 48 at 39.) This speculation is insufficient to establish that Boggs was prejudiced by trial counsel's performance. Boggs confessed to his involvement in the shootings and the gun he pawned was, at a minimum, consistent with the gun that fired the bullets that killed the three victims. Accordingly, PCR counsel's performance was not ineffective because there was no reasonable probability of a different outcome in the PCR proceedings if counsel had raised the underlying ineffective assistance claim. *Sexton*, 679 F.3d at 1157.

Claim 12(A) is procedurally defaulted and barred from federal review. Evidentiary development is denied.

Claim 12(B)

The PCR court rejected Boggs's claim that trial counsel performed ineffectively by failing to object to and rebut evidence of his involvement in a militia. (ROA-PCR 64 at 5; *see* ROA-PCR 54 at 11–12.) Boggs contends that new evidence, principally a declaration by a sociologist "explaining the mostly imagined nature of Boggs's militia participation," fundamentally alters the claim he raised in state court, rendering it unexhausted and subject to analysis under *Martinez*. (Doc. 61 at 34.)

A claim has not been fairly presented in state court if new evidence fundamentally alters the legal claim already considered by the state court or places the case in a significantly different and stronger evidentiary posture than it was when the state court considered it. *See Dickens*, 740 F.3d at 1318–19 (citing, *inter alia*, *Vasquez v. Hillary*, 474 U.S. 254, 260 (1986); *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988); *Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988)).

In his declaration, dated January 11, 2017, Dr. Simi details the risk factors that cause young people to join extremist groups and notes the presence of those factors, including trauma, victimization, and social isolation, in Boggs's life. (Doc. 52-1, Ex. 57.)

The report also minimizes the extent of Boggs's "extremist involvement," characterizing much of it as delusional. (*Id.*)

This information does not "fundamentally alter" the claim raised by PCR counsel, "or place the case in a significantly different and stronger evidentiary posture." *Dickens*, 740 F.3d at 1318. Dr. Simi's declaration does not contradict the evidence already considered by the state court about the size of the militia or its racial motivation. *See Aiken*, 841 F.2d at 883–84 & n.3 (explaining that new evidence consisting of decibel level studies of tape of petitioner's confession, which conflicted with evidence state court had considered, substantially improved evidentiary posture of claim). While the new evidence may cast light on the origins of Boggs's militia involvement, it does nothing to affect the admissibility of the evidence or undermine the evidence of his guilt.

Because the claim is not fundamentally altered, evidentiary development remains barred under *Pinholster*. 563 U.S. at 181.

**Claim 16:**

Boggs alleges that trial counsel performed ineffectively at sentencing. (Doc. 15 at 239.) Claim 16 consists of nine separate claims, some consisting of further subclaims. Some of these claims are exhausted; some were never presented in state court. Boggs seeks discovery, expansion of the record, and an evidentiary hearing in support of these allegations. (Doc. 48 at 44–51.)

<u>1.    Additional facts</u>

Counsel presented three witnesses to testify on Boggs's behalf in the mitigation phase of sentencing. The first was his aunt, Rose Nelson. She testified that her sister, Boggs's mother, was mentally retarded. (RT 5/10/05 at 10.) Boggs had little contact with his father after age five. (*Id.* at 20.)

Boggs was the oldest of three children. His sister died of an epileptic seizure and a few months later his brother committed suicide at age 12 by hanging himself. (*Id.* at 16–17.)

/ / /

Boggs was born with a cleft palate, requiring surgery and prolonged hospitalization. (*Id.* at 18.) He was fed through a tube and was unable to gain weight. (*Id.* at 19.) He also suffered ear infections, which necessitated the insertion of tubes in both ears. (*Id.* at 21.)

Boggs had emotional problems. He was hyperactive and suffered from ADHD. (*Id.* at 22.) He had problems in school and was unable to focus. (*Id.*) He engaged in destructive behavior and ran away from home and school. (*Id.* at 25.)

Due to her disability, Boggs's mother didn't know how to parent and was "very hard on him." (*Id.* at 23.) She practiced "extreme discipline," forcing Boggs to sit in the corner for hours with his face to the wall. (*Id.* at 23.). She blamed and punished him for everything that went wrong. (*Id.*) He was not allowed to go outside to ride a bike or play with his friends. (*Id.* at 22.)

During this period, from ages 5 to 10, Boggs received therapy and medication for his hyperactivity and ADHD; he was prescribed Ritalin, which "helped some." (*Id.* at 24–25.) His mother had difficulty following through with Boggs's counseling. (*Id.* at 25.) He was hospitalized at times for his behavioral problems. (*Id.* at 26–27.) Although he engaged in destructive behaviors, he never tried to hurt anyone. (*Id*. at 25.)

From ages 10 to 15, Boggs spent half his time in group homes. (*Id.* at 28.) He was also hospitalized numerous times for his behavioral issues. (*Id.* at 27.) He received counseling but again his mother was unable to provide proper discipline and guidance. (*Id*. at 30.) At around age 13 he told a counselor he was hearing voices. (*Id.* at 28.) He continued to experience problems in school. (*Id.* at 30.)

Boggs's mother died in 1996, and his siblings two years later. (*Id.* at 31.) He was very close to his brother and blamed himself for his suicide. (*Id.*) His maternal grandparents, with whom he was close, died in 1999. (*Id.*) Boggs spoke of suicide during this period but never threatened anyone else. (*Id.* at 34.)

Next, Dr. Ruiz testified that she diagnosed Boggs with post-traumatic stress disorder and bipolar disorder. (*Id.* at 78, 81–82.) She explained that Boggs had "a long

history of trauma over many developmental stages," beginning with his birth. (*Id.* at 57.) Boggs was a premature infant. (*Id.*) He was born with a syndrome that left him "deformed," with facial abnormalities and "a small head that required many, many surgeries." (*Id.*) He had a severe cleft palate and "suffered from failure-to-thrive," again leading to many hospitalizations. (*Id.*) He was sexually abused at ages 10 and 14. (*Id.*) He was neglected and physically abused by his mother. (*Id.*)

Boggs experienced seizures and hyperactivity. (*Id.* at 58.) He had periods of disassociation related to his past trauma, experienced auditory hallucinations, and was suicidal at one point. (*Id.* at 59–60.) Dr. Ruiz also testified that Boggs "became rather delusional" when speaking about his militia involvement. (*Id.* at 60.)

Finally, Dr. Lanyon testified that Boggs suffers from long-term bipolar, or manic-depressive, disorder. (*Id.* at 117.) He noted that Boggs had a history of depressive periods and suicide threats or attempts, dating from the age of 10. (*Id.* at 124, 128.) Other symptoms of the disorder included ADHD, periods of hearing voices, and Boggs's delusions and grandiosity with respect to his militia involvement. (*Id.* at 124–25.) Dr. Lanyon testified that Boggs was suffering from bipolar disorder at the time of the crimes. (*Id.* at 131.) Dr. Lanyon explained, "That doesn't necessarily mean that his behavior on that day was driven by it. That means that his life up to that point . . . was heavily colored by it." (*Id.*)

In addition to their testimony, counsel submitted the reports of Drs. Ruiz and Lanyon as exhibits for the jury to review.

2. Analysis

Boggs seeks to depose Lisa Willet, the sister of Boggs's ex-girlfriend, who "has potential mitigation information." (Doc. 48 at 44.) This assertion, which constitutes the entirety of Boggs's argument that he is entitled to discovery on this claim, lacks the specificity required by Rule 6. Boggs does not allege specific, relevant facts that might be found in the requested deposition. Thus, the discovery request constitutes the type of "fishing expedition" Rule 6 does not sanction. *See Kemp v. Ryan*, 638 F.3d 1245, 1260

(9th Cir. 2011); *Teti v. Bender*, 507 F.3d 50, 60 (1st Cir. 2007). Boggs's request to depose Lisa Willet is denied.

Boggs also seeks expansion of the record to include the materials outlined in Claim 2, as well as additional family records and a recording of the police interview of Chris Hargrave. He also seeks an evidentiary hearing featuring every lay and expert witness discussed above as well as PCR counsel and the PCR investigator and mitigation specialist. (Doc. 48 at 44–51; *id.*, Ex's 1–97.)

Claims 16(E), (H), and (I) were presented to the PCR court and rejected on the merits.[5] (ROA-PCR 64 at 9–10; *see* ROA-PCR 54.) Claim 16(A)(1), which alleges that trial counsel was ineffective for failing to present family background information, was also raised and denied on the merits. (*Id.* at 6.) Under *Pinholster*, evidentiary development is not permitted. 563 U.S. at 181.

In addition, evidentiary development is not necessary to resolve Claims 16(F) and (G).[6] The record is complete with respect to these aspects of counsel's performance. *See Landrigan*, 550 U.S. at 474; *Totten*, 137 F.3d at 1176; *Beardslee*, 358 F.3d at 585.

The remaining claims of ineffective assistance of counsel at sentencing are unexhausted and procedurally defaulted. Boggs contends that their default is excused under *Martinez* by the ineffective assistance of PCR counsel. (*See* Doc. 15 at 243, 258, 275.)

In Claims 16(A)(2) and (3), Boggs alleges that trial counsel failed to investigate, develop, and present mitigating evidence. (*Id.* at 242.) Specifically, Boggs alleges that counsel failed to present evidence of Boggs's family history of instability, neglect, and

---

[5] Boggs alleges that trial counsel failed to establish a nexus between mitigation and the offense (E); failed to adequately challenge the rebuttal testimony (H); and failed to ensure that their representation would not cumulatively prejudice Boggs (I). (Doc. 15 at 283, 288, and 291.) Boggs has withdrawn Claim 16(D). (Doc. 26 at 111.)

[6] Boggs alleges that trial counsel failed to object to the prosecutor's causal nexus argument (F) and failed to object to the jury instruction on mitigation (G). (Doc. 15 at 285, 287.)

physical, mental, and sexual abuse, and failed to present evidence of his mental and cognitive impairments and delusions. (*Id.* at 246–56.)

Boggs asserts that the testimony of Rose Nelson presented an "incomplete and misleading" picture of Boggs's history. (*Id.* at 248.) In support of that assertion, however, Boggs relies primarily on information that was before the jury, including Nelson's testimony and Dr. Lanyon's report. (*Id.* at 246–53.) Similarly, Boggs's argument that counsel failed to present evidence of Boggs's cognitive impairments and delusions relies on information in Dr. Lanyon's report. (*Id.* at 254–55.)

In Claim 16(B), Boggs alleges that counsel failed to subpoena certain witnesses and failed to adequately prepare others in the mitigation phase. Specifically, he argues that counsel performed deficiently by failing to perform an adequate social history investigation and failing to prepare their expert witnesses. (*Id.* at 270.) He does not indicate, however, what additional witnesses should have been called. (*Id.* at 258.)

In Claim 16(C), he alleges that counsel failed to investigate whether Boggs suffers from Fetal Alcohol Spectrum Disorder (FASD).[7] (*Id.* at 274.)

The Court has reviewed the materials with which Boggs seeks to expand the record in support of his claims of ineffective assistance of counsel at sentencing and finds that additional evidentiary development is unnecessary for the Court to address the merits of the allegations. *See Downs*, 232 F.3d at 1041; *Griffey*, 345 F.3d at 1067. Boggs has "failed to forecast any evidence beyond that already contained in the record, or otherwise to explain how his claim would be advanced by an evidentiary hearing." *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998), *overruled on other grounds by Bell v. Jarvis*, 236 F.3d 149 (4th Cir. 2000); *see Bennett v. Angelone*, 92 F.3d 1336, 1347 (4th Cir. 1996) (denying petitioner's request for an evidentiary hearing because he added nothing new to the "factual mix already before the district court").

---

[7] Boggs has withdrawn his allegation that counsel performed ineffectively by failing to investigate whether Boggs was mentally retarded. (Doc. 26 at 109.)

Accordingly, the Court will grant Boggs's request to expand the record with respect to Claim 16. With these materials, the record is sufficient for the Court to assess, under both prongs of *Strickland*, Boggs's challenges to counsel's investigation and presentation of mitigating evidence. Because Boggs has not shown what facts a hearing would add to the information contained in the materials he has attached to his motion for evidentiary development, the Court denies Boggs's request for an evidentiary hearing. *See Runningeagle v. Ryan*, 825 F.3d 970, 990 (9th Cir. 2016) ("The expanded record included the declarations of witnesses who would testify at a live hearing, and Runningeagle made no showing that their testimony would differ materially from their declarations."); *Williams v. Woodford*, 384 F.3d 567, 591 (9th Cir. 2004) ("Oral testimony and cross-examination were not necessary because the documentary evidence submitted fully presented the relevant facts.").

**Claim 20:**

Boggs raises several allegations of ineffective assistance of appellate counsel. (Doc. 15 at 313.) He did not present these claims in state court. Nevertheless, the PCR court addressed and denied two of the claims on the merits: Claims 20(B)(4) and (5), alleging appellate counsel was ineffective for failing to raise the issues of unrecorded bench conferences and the trial court's failure to hold a hearing on the Rule 404(b) evidence. The parties agree these claims are exhausted. Boggs contends that under *Martinez*, the ineffective assistance of PCR counsel excuses the defaulted ineffective assistance of appellate counsel claims.

Boggs is not entitled to evidentiary development on these claims. *Pinholster* bars the introduction of new evidence. 563 US at 181. The remaining, unexhausted claims are procedurally barred because *Martinez* does not apply to claims of ineffective assistance of appellate counsel. In *Davila*, 137 S. Ct. 2058, the Supreme Court declined to extend *Martinez* to "allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise that claim." *Id.* at 2065.

Moreover, evidentiary development is not warranted because the record is complete with respect to appellate counsel's performance. *See Landrigan*, 550 U.S. at 474; *Totten*, 137 F.3d at 1176. "When a claim of ineffective assistance of counsel is based on failure to raise issues on appeal . . . it is the exceptional case that could not be resolved on an examination of the record alone." *Gray v. Greer*, 800 F.2d 644, 647 (7th Cir. 1986). This is not one of those "exceptional cases." Boggs has not identified any disputed facts relevant to his appellate ineffective assistance claims. *See Beardslee*, 358 F.3d at 585.

## IV. CONCLUSION

Expansion of the record is appropriate with respect to Boggs's allegations of ineffective assistance of counsel at sentencing. His remaining requests for evidentiary development, including discovery and an evidentiary hearing, are denied.

Accordingly,

**IT IS ORDERED** granting in part and denying in part Boggs's motion for evidentiary development (Doc. 48), as described herein. Expansion of the record is granted with respect to Exhibits 1–97. Boggs's other requests for evidentiary development are denied.

**IT IS FURTHER ORDERED** denying Claims 1, 2, 4 (in part), 7, 8, 12(A), 15 (in part), 17, 18, 22, 40, and 43 as procedurally defaulted and barred from federal review.

**IT IS FURTHER ORDERED** denying Claims 22, 24, 26, 28, 30, and 40 as meritless.

Dated this 16th day of April, 2018.

_____
Honorable G. Murray Snow
United States District Judge